■ In the Matter of LATASHA F., a Child Alleged to be Permanently Neglected. ERIE COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent; DALE W., Appellant. (Appeal No. 1.) [674 NYS2d 237] —Order unanimously reversed on the law without costs and petition dismissed. Memorandum: Petitioner, Erie County Department of Social Services (DSS), commenced this proceeding seeking a determination that respondent mother permanently neglected her child by failing to plan for her future and an order terminating respondent's parental rights and committing the child to the custody and guardianship of DSS for the purpose of adoption. Family Court erred in granting the petition.

The record establishes that, on or about January 1992, re-

spondent was sentenced to a term of imprisonment with the earliest possible release on parole in November 1995. Pursuant to the service plan and goal of DSS, respondent would receive drug and alcohol counseling and would be required to demonstrate her ability to provide a safe and adequate home environment for the child before the child was returned to her care and custody. The service plan further provided that "[n]o services are planned until [respondent] is released from prison". It also provided that the child would continue in foster care because the foster home "continues to meet the needs of [the child]". The caseworker advised respondent that she needed to attend drug and alcohol counseling while in prison and, on February 22, 1993, she advised respondent that "[i]t is not our plan to terminate your rights, in order that your daughter * * * may be adopted".

The record further establishes that, while incarcerated, respondent sought and obtained regular visitation with her child, and she maintained contact with the child through holiday cards, other correspondence and phone calls. Respondent also had contact with the caseworkers. Indeed, respondent had almost weekly contact with the caseworker assigned until June 1993. While incarcerated, respondent also took steps to resolve her problems and to change her pattern of behavior in order to be reunited with her child and provide her with a safe and adequate home environment. Specifically, respondent successfully completed two substance abuse programs, a Reach program about infectious diseases associated with drug use and two family violence programs. She obtained a high school diploma and a certificate of industry labor in metal industry work, and she became a qualified teacher's aide. Moreover, when her caseworker advised her after the permanent neglect petition was filed that the service plan included parenting classes, she immediately began attending such classes. The unequivocal testimony of respondent that she obeyed every directive by the caseworkers stands unrebutted.

In May 1994 DSS filed the present petition seeking to terminate respondent's parental rights on the ground that respondent failed to plan for the future of her child. The petition alleged that respondent's plan of long-term foster care for the child pending respondent's release from prison, which at the earliest was November 1995, did not constitute a realistic and acceptable plan for the child's future. The evidence submitted by DSS, however, fails to establish that any service plan or review conducted before the permanent neglect petition was filed indicated that continuing foster care until respondent's

release was not an appropriate plan. It further appears that respondent was never told that her plan to continue foster care pending her release was unacceptable and could result in the termination of her parental rights. In fact, the first service plan, wherein DSS indicated that long-term foster care was not a feasible and realistic plan and that respondent had not made any attempt to plan for the child while she was incarcerated, was signed June 29, 1994, over a month after the permanent neglect petition was filed. That service plan also indicated that there was a change in permanent planning goals from the previous plan and that a termination of parental rights proceeding was pending. After respondent was advised that her long-term foster care plan was not acceptable, she formulated a new plan wherein the child was to be placed with respondent's retired stepmother pending respondent's release. There is no indication in the record that DSS made any effort to consider or pursue that option rather than proceeding with the permanent neglect petition.

Under those circumstances, we conclude that respondent satisfied her obligation to plan for the future of the child (*see,* Social Services Law § 384-b; *Matter of Gregory B.,* 74 NY2d 77). In reaching that conclusion, we readily acknowledge that long-term foster care does not constitute an adequate plan for the care and custody of a child of an incarcerated parent where that foster care will continue for the remainder of the child's minority or for an extended period of time (*see, Matter of Gregory B., supra,* at 89-90; *Matter of Carmen N.,* 237 AD2d 607, 608, *lv denied* 90 NY2d 805 [9 to 18 years' imprisonment with child in foster care]; *Matter of Omar Garry G.,* 198 AD2d 149, *lv denied* 83 NY2d 753 [at least seven years in foster care]; *Matter of Latasha C.,* 196 AD2d 756 [at least six years in foster care]).

That, however, is not the case here. When DSS filed its permanent neglect petition, respondent's earliest possible release date was November 1995, only 16 months later. Moreover, DSS had acquiesced in the plan for foster care for the child pending respondent's release until it filed the termination petition. The efforts of respondent while in prison to better herself and prepare for the return of the child upon her release, along with her cooperation with the caseworkers and her proposal of an alternative plan when advised that long-term foster care was not acceptable, establish that she adequately planned for the future of the child (*see, Matter of Gregory B., supra,* at 89). If respondent's plan was inadequate, it was because DSS failed to advise respondent that her plan was unacceptable and to as-

sist her in formulating a plan for her child's future, which failure constitutes a violation of the statutory obligation of DSS to use "diligent efforts" to encourage and strengthen the parental relationship (Social Services Law § 384-b [7] [a]; *see, Matter of Anita "PP"*, 65 AD2d 18; *see also, Matter of Gregory B., supra*, at 87; *Matter of Sheila G.*, 61 NY2d 368, 384-385).

Consequently, we reverse the order and dismiss the petition. (Appeal from Order of Erie County Family Court, Rosa, J.— Terminate Parental Rights.) Present—Denman, P. J., Lawton, Wisner, Balio and Boehm, JJ.